**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

OLIVIA C. GOPEZ,     ) No. EDCV 13-1054-AS
            )
     Plaintiff,  )
   v.      ) **MEMORANDUM OPINION**
            )
CAROLYN W. COLVIN,   )
Acting Commissioner of the )
Social Security Administration, )
            )
     Defendant.  )
            )
_____)

**PROCEEDINGS**

On June 19, 2013, Plaintiff Olivia C. Gopez filed a Complaint seeking review of the denial of her application for Social Security benefits. (Docket Entry No. 3). On August 21, 2013, the matter was transferred to the current Magistrate Judge. (Docket Entry No. 12). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 14, 15). On September 18, 2013, Defendant filed an Answer to the Complaint along with the Administrative Record ("A.R."). (Docket Entry Nos. 17, 18). On

January 13, 2014, the parties filed a Joint Stipulation setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 22). The Court has taken the matter under submission without oral argument. See C.D. Cal. L.R. 7-3; Case Management Order, filed June 26, 2013. (Docket Entry No. 6).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On June 24, 2010, Plaintiff filed applications for disabled widow's benefits and Supplemental Security Income ("SSI"). (A.R. 123-24.) Plaintiff asserts disability beginning January 17, 2007, due to multiple impairments including diabetes, degenerative disc disease in her cervical spine, arthritis, depression, diverticulitis, and osteoporosis. (A.R. 150.)

After the Commissioner denied Plaintiff's claims initially and on reconsideration, Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (A.R. 72.) The ALJ held a hearing on September 19, 2011. (A.R. 24-45.) The ALJ examined the record and heard testimony from Plaintiff, medical expert Dr. Steven Gerber, and vocational expert ("VE") Alan Boroskin. (See id.)

On October 27, 2011, the ALJ issued a decision denying Plaintiff's applications. (A.R. 13-25.) The ALJ found that Plaintiff has the following severe impairments: (1) diabetes mellitus, (2) mild degenerative disc disease of the cervical spine, and (3) obesity. (A.R. 15.) The ALJ did not find Plaintiff's other

diagnosed or claimed conditions, including carpal tunnel syndrome, to be severe. (Id.)

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently, sit for six hours out of an eight-hour workday, and stand or walk for six hours out of an eight-hour workday with normal breaks. (A.R. 16.) The ALJ also found that Plaintiff can occasionally climb ramps and stairs as well as occasionally balance, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds or work at heights. (Id.) In addition, the ALJ determined that Plaintiff can occasionally reach above the shoulder level bilaterally. (Id.)

In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible. (A.R. 17.) The ALJ referred to the objective medical evidence in the record and the fact that none of the treating or examining physicians opined that Plaintiff was totally and permanently disabled from any kind of work. (Id.) The ALJ also relied on Plaintiff's conservative treatment. (A.R. 17–18.)

The ALJ determined that Plaintiff had past relevant work ("PRW") as a teller, customer service clerk, and bookkeeping clerk at a bank. (A.R. 20.) Relying on the testimony of the VE, the ALJ found that Plaintiff was capable of performing her PRW. (Id.) Accordingly, the

ALJ concluded that Plaintiff was not disabled from January 17, 2007, through the date of decision. (<u>Id.</u>)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council on May 3, 2013. (A.R. 1-3.)  The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision.  <u>See</u> 42 U.S.C. §§ 405(g), 1383(c).

## PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ erred in (1) finding that Plaintiff's previous employment at a bank is PRW for the purposes of Plaintiff's SSI claim, and finding that Plaintiff performed three separate occupations — teller, customer service clerk, and bookkeeping clerk — in her PRW, (Joint Stip. 4-7); (2) determining that Plaintiff is capable of performing PRW because he did not properly consider Plaintiff's subjective complaints, (Joint Stip. 11-15); and (3) discounting the credibility of Plaintiff and her brother, (Joint Stip. 18-22.)

## STANDARD OF REVIEW

This court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is more than a scintilla, but less than a preponderance."

Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  To determine whether substantial evidence supports a finding, "a court must consider [] the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  As a result, "[i]f evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a] court may not substitute its judgment for that of the ALJ."  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).

## APPLICABLE LAW

"The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'"  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423(d)(1)(A)).  The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability.  20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity.  Id. § 404.1520(a)(4)(i).  "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit."  Id. §§ 404.1510, 404.1572.  If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step

two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits her ability to do basic work activities. See id. § 404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686. An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Webb, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe impairment, the ALJ must find the claimant not disabled. Id.; 20 C.F.R. § 1520(a)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (holding that the ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling her to a disability finding. Webb, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must determine the claimant's RFC, that is, the ability to do physical and mental work activities on a sustained basis despite limitations from all her impairments. 20 C.F.R. § 416.920(e).

Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that she has done in the past, defined as work performed in the last fifteen years

prior to the disability onset date.   If the ALJ finds that the claimant cannot do the type of work that she has done in the past or does not have any past relevant work, the ALJ proceeds to step five. At step five, the ALJ determines whether — taking into account the claimant's age, education, work experience, and RFC — there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy.   Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v).   The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.   Tackett, 180 F.3d at 1098.

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material[1] legal error.

**A.   The ALJ Properly Classified Plaintiff's Past Relevant Work**

Plaintiff raises two arguments with respect to the ALJ's determination of her PRW.   First, as to her SSI claim only, Plaintiff

---

[1]

The harmless error rule applies to the review of administrative decisions regarding disability.   See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

claims that the ALJ erred by finding that her previous employment at a bank is PRW because her job ended more than 15 years before the ALJ's decision. (Joint Stip. 4.)   Second, Plaintiff contends that the ALJ committed reversible error by finding that she performed three separate occupations — teller, customer service clerk, and bookkeeping clerk — within the 15-year period. (Id. at 6.)

## 1.   Fifteen-Year Period for Past Relevant Work

Past relevant work is defined as work "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R.                    § 416.960(b)(1).   The ALJ considered Plaintiff's PRW to be teller, customer service clerk, and bookkeeping clerk, based on Plaintiff's description of her prior employment at three banks. (A.R. 20; 142–44.)   Plaintiff does not dispute that this prior employment was "substantial gainful activity" and lasted long enough for her to learn how to do it.   However, Plaintiff claims that she ended her employment with the last bank outside the 15-year period included in the PRW definition for her SSI claim. (Joint Stip. 4–6.)

Defendant contends that the ALJ reasonably inferred from the record that Plaintiff's bank employment fell within the 15-year period. (Id. at 7.)   Defendant also asserts that the 15-year period is only a "guide" and not an "unflinching rule" for assessing PRW and the policy behind the timeframe supports the ALJ's determination. (Id. at 8.)

8

"Work performed 15 years or more prior to the time of adjudication of the claim . . . is ordinarily not considered relevant." SSR 82-62, 1982 WL 31386, at *1 (Jan. 1, 1982). The date of adjudication is generally the date of determination or decision at any level of review. See id. at *2. The parties agree that the 15 years should be calculated based on the October 27, 2011 date of the ALJ's decision. (Joint Stip. 5-6, 8.) Thus, the 15-year period runs from October 27, 1996, to October 27, 2011. (Id.)

Plaintiff maintains that her bank employment ended before October 1996, and, therefore, should not have been considered by the ALJ as PRW with respect to her SSI claim.[2] Plaintiff worked at three different banks throughout her career: Union Bank in 1980, Sumitomo Bank of California from 1981 to 1987, and PFF Bank and Trust ("PFF Bank") from 1995 to 1996. (A.R. 142-44.) Plaintiff admits that she does not recall the specific month that she stopped working at PFF Bank, but contends that simple math shows that she stopped working at PFF Bank months prior to October 27, 1996. (Joint Stip. 6.) Plaintiff's total earnings at PFF Bank in 1996 were $8,251.99. (A.R. 144.) According to Plaintiff, she earned $9.75 an hour and worked 30 hours a week at PFF Bank. (A.R. 151, 159, 170.) Thus, Plaintiff claims that her weekly earnings were $292.50. (Joint Stip. 6.)

---

[2]    Plaintiff acknowledges that her bank employment, which ended in 1996, falls within the 15-year period for the purposes of her widow's benefits claim for which the date of last eligibility is September 30, 2010. (Joint Stip. 4.) Thus, the date used to determine the 15-year PRW period for Plaintiff's widow's benefits claim is different than the adjudication date applicable to Plaintiff's SSI claim. See 20 C.F.R. § 404.1560(b)(1).

Dividing that amount into her total earnings for the year, Plaintiff contends that she only worked at PFF Bank for 28 weeks in 1996, or until July 1996, placing her prior employment outside the 15-year period. (<u>Id.</u>)

The Court is unpersuaded by Plaintiff's arguments and calculations. It is Plaintiff's burden to establish that she is unable to perform her PRW. <u>See</u> <u>Pinto v. Massanari</u>, 249 F.3d 850, 844 (9th Cir. 2001). Aside from Plaintiff's informal calculations in the Joint Stipulation, which were not made on the record before the ALJ, Plaintiff has offered no support for her contention that her employment at PFF Bank fell outside the 15-year period. Moreover, as Defendant points out, Plaintiff earned $8,375.54 over a 12 month employment at PFF Bank in 1995, which is similar to Plaintiff's 1996 earnings at the bank. (Joint Stip. 7-8; A.R. 144.) Absent evidence to the contrary, the ALJ reasonably inferred that Plaintiff's earnings in 1996 arose from 12 months of work at PFF Bank. <u>See</u> <u>Batson</u>, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.").

Moreover, Defendant is correct in stating that the 15-year period is not an "unflinching rule." (Joint Stip. 8-9.)

> We do not *usually* consider that work you did 15 years or more before the time we are deciding whether you are disabled applies. A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to

apply.   The 15-year *guide* is intended to insure that remote work experience is not currently applied.

20 C.F.R. § 416.965(a) (emphasis added).   Here, regardless of when Plaintiff left her job at PFF Bank in 1996, it is unlikely that a "gradual change" as described in the agency regulations occurred between July and October 1996 that rendered the skills and abilities Plaintiff acquired obsolete.   In addition, Plaintiff's own description of her job responsibilities — assisting customers with deposits and withdrawals, opening new accounts, and counting money — underscores the continued relevancy of her work experience.   (<u>See</u> Joint Stip. 9; A.R. 179.)

Accordingly, the Court finds that the ALJ did not err in considering Plaintiff's bank employment PRW for the purpose of her SSI claim.

2.   <u>Description of Plaintiff's Past Relevant Work</u>

Plaintiff contends that, with respect to her widow's benefits claim and her SSI claim, the ALJ committed reversible error by finding that she performed three separate occupations — teller, customer service clerk, and bookkeeping clerk — within the prescribed 15-year period.   (Joint Stip. 6; A.R. 20.)   Plaintiff maintains that she performed all three occupations at various times throughout her career at the three different banks.   (Joint Stip. 6-7; A.R. 170, 179.) However, Plaintiff claims that the record is not clear as to which occupation she performed at PFF Bank.   (Joint Stip. 7.)

Plaintiff's argument is flawed for a number of reasons. First, Plaintiff herself described her job responsibilities and did not distinguish these responsibilities in describing her work history at the three different banks. (A.R. 168, 170, 179.) Thus, any ambiguity as to her duties at PFF Bank, compared to those performed at the two other banks, is attributable to Plaintiff, and it was reasonable for the ALJ to conclude that she performed all the job responsibilities described at PFF Bank. See Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (holding that a claimant's own testimony about the requirements of his PRW was "highly probative"); SSR 82-62, 1982 WL 31389, at *3 ("The claimant is the primary source for vocational documentation . . . ."); SSR 82-41, 1982 WL 31389, at *4 (Jan. 1, 1982) ("The claimant is in the best position to describe just what he or she did in PRW, how it was done, what exertion was involved, what skilled or semiskilled work activities were involved, etc."); see also Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) ("[T]he ALJ is entitled to draw inferences logically flowing from the evidence.").

In addition, the ALJ relied on the VE's testimony to classify Plaintiff's PRW as teller, customer service clerk, and bookkeeping clerk. (A.R. 20.) The VE testified that these three occupations encompassed Plaintiff's description of her "banking work." (A.R. 41-42.) It was proper of the ALJ to take administrative notice of the VE's classification of Plaintiff's PRW. Bayliss v. Barnhart, 327 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ may take administrative notice of any reliable job information, including information provided by a VE."); see also SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982) ("For those instances where available documentation and vocational

material are not sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a vocational specialist or vocational expert.").

For these reasons, the ALJ did not err in classifying Plaintiff's PRW as that of a teller, customer service clerk, and bookkeeping clerk.

**B.    The ALJ Did Not Err In His Credibility Assessment**

Plaintiff challenges the ALJ's decision to discount her testimony as well as the testimony of her brother, Frederick Carrasco.

    1.    <u>Plaintiff's Credibility</u>

Plaintiff contends that the ALJ committed reversible error in finding that "[t]he weight of the objective evidence does not support the claimant's claims of disabling limitations to the degree alleged," (Joint Stip. 18; A.R. 17), because the ALJ failed to provide specific reasons for finding that her testimony concerning pain, functional limitations, and other symptoms was not credible. (Joint Stip. 18–19.)  Defendant claims that the ALJ articulated specific reasons for discounting Plaintiff's subjective-symptom testimony, properly relying on objective medical evidence and Plaintiff's conservative course of treatment. (<u>Id.</u> at 22–25.)

An ALJ's assessment of a claimant's credibility and the severity of his or her symptoms is entitled to "great weight." See Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (internal quotations and citation omitted). If such objective medical evidence exists, the ALJ may not reject the claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen, 80 F.3d at 1282 (emphasis in original). Instead, in finding the claimant's subjective complaints not credible, the ALJ must make "specific, cogent" findings that support the conclusion. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (quoting Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990)). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.3d at 834.

14

The Court's review of the ALJ's decision shows that the ALJ discounted Plaintiff's testimony for the following reasons: (1) objective medical record; (2) inconsistencies between the objective medical evidence and Plaintiff's testimony; and (3) conservative course of treatment.

The Court disagrees with Plaintiff's contention that the ALJ misinterpreted the objective medical evidence to reach his credibility determination. (See Joint Stip. 19-20.) In discounting Plaintiff's credibility regarding the severity of her symptoms, the ALJ specifically stated that "[n]one of the claimant's treating physicians has opined that she is totally and permanently disabled from any kind of work." (A.R. 17.) "Although a lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the opinions of examining doctors and medical experts can serve "as substantial evidence supporting the ALJ's findings with respect to [the claimant's] physical impairment and exertional limitations"); Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (ALJ properly discounted the claimant's allegations where no doctor "expressed the opinion that [the claimant] was totally disabled" or "implied that [the claimant] was precluded from *all* work activity"). Thus, ALJ properly relied on the lack of corroborating medical evidence as a factor in his credibility assessment.

The ALJ also pointed out inconsistencies between the objective medical evidence and Plaintiff's testimony regarding the severity of her symptoms. (See A.R. 17–18.) The ALJ noted that Dr. Michael Eagan, the consultative examiner, conducted a physical examination of Plaintiff in September 2010 and found that Plaintiff had normal, unassisted gait and could sit "comfortably" and rise from a sitting to supine position. (A.R. 379.) Dr. Eagan also found that Plaintiff had "full pain-free range of motion" throughout her neck, back, and extremities with the exception of her left shoulder. (A.R. 379–81.) The ALJ pointed out that Dr. Eagan observed that "reported pain is out of proportion to the examination findings" with respect to Plaintiff's left shoulder. (A.R. 18, 380.) These inconsistencies between the objective medical evidence and Plaintiff's testimony support the ALJ's credibility determination. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ properly discounted the claimant's credibility after citing the conflict between his subjective complaints and the objective medical evidence).

The ALJ also referenced Plaintiff's conservative course of treatment to discount her testimony about the severity of her symptoms. (See A.R. 17–18.) The ALJ noted that Plaintiff has never been hospitalized for her impairments and has not received "significant active care" beyond "conservative routine maintenance." (A.R. 18.) Moreover, Plaintiff's "use of medications does not suggest the presence of impairments that are more limiting than found in this decision." (A.R. 17.) The ALJ was skeptical of the severity of Plaintiff's alleged pain because Plaintiff had never maintained a

regular prescription of strong analgesics such as morphine, methadone, Fentanyl, or Oxycontin. (Id.) While Plaintiff testified that pain medication made her nauseous, the ALJ pointed out that Plaintiff never reported any side effects of her medication to her doctors. (A.R. 18, 238, 408); 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (permitting consideration of "the type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate pain or other symptoms"). The Court finds that the ALJ properly considered Plaintiff's conservative course of treatment in discounting the severity of Plaintiff's subjective symptoms. See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.").

Although Plaintiff cites to portions of the medical record that she claims are consistent with her testimony, these citations are unavailing. (See Joint Stip. 12-14, 20.) Plaintiff references her own statements to doctors, rather than a doctor's observations of her impairments, (Joint Stip. 12; A.R. 395), and medical records that pre-date her alleged disability onset date by a few years. (A.R. 17, 392-93, 400.) Plaintiff also references her diagnosis of degenerative disc disease, but this is not inconsistent with the ALJ's RFC determination, which took the diagnosis into account. (A.R. 15, 18, 265, 268, 431-32.)

Based on the lack of corroboration for and inconsistencies between the objective medical evidence and Plaintiff's testimony, as well as a conservative course of treatment, the Court finds that the

ALJ provided "clear and convincing" reasons for discounting Plaintiff's testimony regarding the severity of her symptoms and limitations. <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second guessing.")

2.   <u>Frederick Carrasco's Credibility</u>

Plaintiff also contends that the ALJ rejected the testimony of Plaintiff's brother, Frederick Carrasco, without adequate justification. (Joint Stip. 21.) The ALJ gave "little weight" to Carrasco's opinion due to his familial bias and pecuniary interest in the outcome of Plaintiff's claim because he lived with Plaintiff. (A.R. 19-20.) The ALJ also found that since Carrasco was "not a medical person," his opinion was entitled to less weight than the medical doctors in the record, and his testimony was inconsistent with the medical record. (A.R. 20.)

The Court finds that the ALJ properly discounted Carrasco's testimony by noting the inconsistency of his testimony with the medical record. Carrasco testified to Plaintiff's limitations, including that she needs assistance to climb stairs and move about the house, is unable to lift or carry certain objects, and requires help with many daily activities. (A.R. 201-09.) However, the objective medical evidence already discussed above, particularly the observations of Dr. Eagan, is inconsistent with Carrasco's statements. Accordingly, the ALJ did not err in affording "little weight" to Carrasco's testimony. <u>See</u> <u>Bayliss v. Barnhart</u>, 427 F.3d

18

1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses.   Inconsistency with medical evidence is one such reason.").

**C.   The ALJ Did Not Err In Finding That Plaintiff Was Able To Perform Past Relevant Work**

Plaintiff's remaining challenge to the ALJ's decision concerns the ALJ's finding that Plaintiff was able to perform her PRW. (<u>See</u> Joint Stip. 11.)   According to Plaintiff, her impairments and resulting limitations clearly preclude her from performing her PRW as a teller, customer service clerk, or bookkeeping clerk.   (<u>Id.</u>) Plaintiff relies heavily on her own subjective complaints to support this challenge and also contends that the ALJ did not properly consider the VE's testimony or the objective medical evidence. (<u>Id.</u> at 11-15.)

First, as set forth above, the Court finds that the ALJ did not err in discounting Plaintiff's credibility regarding the severity of her symptoms.   Thus, the ALJ was not required to rely on Plaintiff's subjective complaints in assessing her ability to perform her PRW. The ALJ was also not required to rely on any of the VE's testimony that was premised on Plaintiff's subjective complaints, including hypotheticals posed by Plaintiff's counsel on cross-examination. (<u>See</u> A.R. 41-44); <u>Batson</u>, 359 F.3d at 1197-98 (the ALJ need not accept VE testimony based on a claimant's properly discounted testimony); <u>Magallanes v. Bowen</u>, 881 F.2d 747, 756 (9th Cir. 1989) ("The vocational expert's opinion about a claimant's residual

functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record.").

The Court also finds that the ALJ properly considered the objective medical evidence in determining Plaintiff's RFC and finding that she was capable of performing her PRW. As discussed above, the ALJ was entitled to rely on Dr. Eagan's examination and conclusions. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that an examining physician's opinion alone can constitute substantial evidence). Moreover, the ALJ also relied on additional medical evidence in the record to support his conclusion, including the opinions of two non-examining physicians — Dr. Gerber, who testified at the hearing, and Dr. S. Brodsky, who reviewed Plaintiff's medical records and issued a written report in October 2010. (A.R. 29–30, 372–87.) Dr. Gerber opined that Plaintiff was capable of a light level of activity consistent with the ALJ's ultimate RFC determination. (A.R. 29–30.) Dr. Brodsky largely reiterated Dr. Eagan's conclusions about Plaintiff's limitations, with the further limitation that Plaintiff cannot climb ladders, ropes, or scaffolds. (A.R. 385–87.) Thus, the ALJ's finding that Plaintiff was able to perform her PRW was supported by the record. See Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with the independent clinical findings or other evidence in the record."); 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

To the extent that Plaintiff challenges the ALJ's reliance on the VE's testimony, Plaintiff's arguments are flawed. The first hypothetical posed to the VE included all of the limitations that the ALJ incorporated into Plaintiff's RFC, and the VE concluded that Plaintiff could perform her PRW "as usually and customarily performed." (See A.R. 42.) The limitations in Plaintiff's RFC were supported by substantial evidence — including the conclusions of Dr. Eagan, Dr. Gerber, and Dr. Brodsky. Accordingly, the ALJ properly relied on the VE's testimony in response to the first hypothetical to reach his conclusion that Plaintiff could perform her PRW. However, the ALJ was not required to consider the VE's testimony in response to hypotheticals not supported by evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that [the plaintiff] had claimed, but failed to prove.").

Finally, Plaintiff claims that the ALJ improperly relied on the VE's testimony because it is not based on Plaintiff's description of the physical requirements of the work she performed at the bank. Plaintiff described having to lift and carry 25 to 30 pounds as a teller, which the VE identified as medium work. (A.R. 42, 170.) However, the ALJ's first hypothetical required lifting only 20 pounds occasionally and 10 pounds regularly. (A.R. 41–42.) Nevertheless, Plaintiff's argument is unavailing because a claimant is not disabled if he or she can perform "the actual functional demands" of her PRW or "the functional demands and job duties as generally required by

employees throughout the national economy." <u>Pinto v. Massanari</u>, 249 F.3d 840, 845 (9th Cir. 2001). Here, the ALJ concluded that Plaintiff was capable of performing her PRW as generally required. (A.R. 20.) The Dictionary of Occupational Titles classifies a teller as light work and the VE testified that Plaintiff was capable of performing her PRW "as usually and customarily performed." (A.R. 42.) It was not necessary to ask the VE whether Plaintiff could do her PRW as actually performed.

The Court finds that the ALJ did not err in concluding that Plaintiff was capable of performing her PRW as a teller, customer service clerk, and bookkeeping clerk.

**ORDER**

For all of the foregoing reasons, the decision of the Administrative Law Judge is affirmed.

Let judgment be entered accordingly.

Dated: April 28, 2015.

                                    /s/
                                    _____
                                    Alka Sagar
                                    United States Magistrate Judge